1

2

3

4

5

6

7

8

9          IN THE UNITED STATES DISTRICT COURT

10          FOR THE EASTERN DISTRICT OF CALIFORNIA

11   DANNY SAUL ROSALES,

12          Petitioner,              No. CIV S-03-0230 JAM DAD (TEMP) P

13          vs.

14   THOMAS L. CAREY, Warden, et al.,        FINDINGS AND RECOMMENDATIONS

15          Respondents.

16   _____/

17          Petitioner is a state prisoner proceeding with counsel on a petition for a writ of

18   habeas corpus under 28 U.S.C. § 2254.  He challenges the California Board of Parole Hearings'

19   ("the Board") decision to deny him parole in 2000.  Petitioner raises the following claims: (1) his

20   right to due process was violated because there is no evidentiary support for or rational

21   connection between the Board's findings and conclusions; (2) his right to due process was

22   violated because the Board found him unsuitable for parole as a result of his failure to meet

23   conditions which he had already met; (3) his right to due process was violated because the Board

24   did not engage in individualized decision-making and instead implemented an unwritten policy

25   to deny parole to all murderers; (4) his Eighth Amendment right to be free of cruel and unusual

26   punishment was violated when the Board conducted a pro forma hearing that did not allow him

1

1    to demonstrate his suitability for parole; and (5) his due process and Eighth Amendment rights

2    were violated by the Board's de facto sentence of life without parole, depriving petitioner of the

3    benefit of his plea bargain.

4    I.      Procedural Background

5             The original federal habeas petition was filed in this case on February 5, 2003, by

6    petitioner proceeding without counsel.  (Doc. No. 1.)  The then-assigned Magistrate Judge

7    appointed counsel for petitioner and directed the parties to file a joint scheduling statement.

8    (Doc. No. 4 & 6.)  Based upon representations made in that joint scheduling statement, the court

9    directed petitioner's counsel to inform the court whether petitioner would be seeking a stay of

10   this action in order to permit his exhaustion of additional claims in state court.  (Doc. No. 8.)  On

11   November 20, 2003, the court granted petitioner's unopposed request for a stay pending

12   exhaustion of his additional claims.  (Doc. No. 15.)  On December 10, 2004, petitioner filed a

13   request to lift the stay and submitted his amended petition and, on July 1, 2005, respondent

14   answered the amended petition.  (Doc. Nos. 21 and 25.)  Petitioner filed a traverse on September

15   16, 2005.  (Doc. No. 30.)

16           On October 22, 2008, the assigned district judge stayed this case pending the

17   Ninth Circuit's en banc decision in <u>Hayward v. Marshall</u>.  (Doc. No. 34.)  On May 21, 2010, the

18   district court lifted the stay and asked the parties for letter briefs on the impact of the Ninth

19   Circuit's <u>en banc</u> decision in <u>Hayward</u>.  (Doc. No. 35.)  However, on January 24, 2011, the

20   United States Supreme Court issued its decision in <u>Swarthout v. Cooke</u>, 562 U.S. ___ , ___, 131

21   S. Ct. 859, 861-62 (2011), thereby altering the legal landscape with respect to federal habeas

22   review of the denial of parole to state prisoners.  The action stands submitted for decision.

23   II.     Standards of Review Applicable to Habeas Corpus Claims

24           A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

25   some transgression of federal law binding on the state courts.  <u>See Peltier v. Wright</u>, 15 F.3d 860,

26   861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v.</u>

Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

(1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court shall
> not be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of the
> claim -
>
> (1) resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362

(2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).  If the state court's decision

does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review

of a habeas petitioner's claims.  Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008).  See

also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we

may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error,

we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state

court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  See also Barker v.

Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005) ("When more than one state court has adjudicated

1   a claim, we analyze the last reasoned decision").  If the last reasoned state court decision adopts

2   or substantially incorporates the reasoning from a previous state court decision, this court may

3   consider both decisions to ascertain the reasoning of the last decision.  Edwards v. Lamarque,

4   475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  Where the state court reaches a decision on the

5   merits but provides no reasoning to support its conclusion, a federal habeas court independently

6   reviews the record to determine whether habeas corpus relief is available under § 2254(d).

7   Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167

8   (9th Cir. 2002).  When it is clear that a state court has not reached the merits of a petitioner's

9   claim, AEDPA's deferential standard does not apply and a federal habeas court must review the

10  claim de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

11  III.     Scope of Review Applicable to Due Process Challenges to the Denial of Parole

12          The Due Process Clause of the Fourteenth Amendment prohibits state action that

13  deprives a person of life, liberty, or property without due process of law.  A litigant alleging a

14  due process violation must first demonstrate that he was deprived of a liberty or property interest

15  protected by the Due Process Clause and then show that the procedures attendant upon the

16  deprivation were not constitutionally sufficient.  Kentucky Dep't of Corrections v. Thompson,

17  490 U.S. 454, 459-60 (1989).

18          A protected liberty interest may arise from either the Due Process Clause of the

19  United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an

20  expectation or interest created by state laws or policies."  Wilkinson v. Austin,  545 U.S. 209,

21  221 (2005).  See also Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).  The United States

22  Constitution does not, of its own force, create a protected liberty interest in a parole date, even

23  one that has been set.  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981); Greenholtz v. Inmates of

24  Neb. Penal, 442 U.S. 1, 7 (1979) (There is "no constitutional or inherent right of a convicted

25  person to be conditionally released before the expiration of a valid sentence.").  However, a

26  state's statutory scheme, if it uses mandatory language, "creates a presumption that parole release

4

1  will be granted" when or unless certain designated findings are made, and thereby gives rise to a

2  constitutional liberty interest.  Greenholtz, 442 U.S. at 12.  See also Allen, 482 U.S. at 376-78.

3        California's parole scheme gives rise to a liberty interest in parole protected by the

4  federal Due Process Clause.  Pirtle v. California Bd. of Prison Terms, 611 F.3d 1015, 1020 (9th

5  Cir. 2010); McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002); see also Swarthout v.

6  Cooke, 131 S. Ct. at 861-62 (finding the Ninth Circuit's holding in this regard to be a reasonable

7  application of Supreme Court authority); Pearson v. Muntz, 639 F.3d 1185, 1191 (9th Cir. 2011)

8  ("[Swarthout v.] Cooke did not disturb our precedent that California law creates a liberty interest

9  in parole.")  In California, a prisoner is entitled to release on parole unless there is "some

10  evidence" of his or her current dangerousness.  In re Lawrence, 44 Cal.4th 1181, 1205-06, 1210

11  (2008); In re Rosenkrantz, 29 Cal.4th 616, 651-53 (2002).

12        In Swarthout, the Supreme Court reviewed two cases in which California

13  prisoners were denied parole - in one case by the Board, and in the other by the Governor after

14  the Board had granted parole.  Swarthout, 131 S. Ct. at 860-61.  The Supreme Court noted that

15  when state law creates a liberty interest, the Due Process Clause of the Fourteenth Amendment

16  requires fair procedures, "and federal courts will review the application of those constitutionally

17  required procedures."  Id. at 862.  The Court concluded that in the parole context, however, "the

18  procedures required are minimal" and that the "Constitution does not require more" than "an

19  opportunity to be heard" and being "provided a statement of the reasons why parole was denied."

20  Id. (citing Greenholtz, 442 U.S. at 16).  The Supreme Court therefore rejected Ninth Circuit

21  decisions that went beyond these minimal procedural requirements and "reviewed the state

22  courts' decisions on the merits and concluded that they had unreasonably determined the facts in

23  light of the evidence."  Swarthout, 131 S. Ct. at 862.  In particular, the Supreme Court rejected

24  the application of the "some evidence" standard to parole decisions by the California courts as a

25  /////

26  /////

5

1  component of the federal due process standard.  Id. at 862-63.  See also Pearson, 639 F.3d at

2  1191.[1]

3  IV.      The Guilty Plea and Decisions From the Parole Board and State Courts

4              In his underlying criminal case in state court, petitioner pleaded guilty to second

5  degree murder and assault with the intent to commit murder and admitted that he inflicted great

6  bodily injury.  Answer (Ans.), Ex. A at 43.  During the plea colloquy, the prosecutor advised

7  petitioner of the parole implications of his guilty plea and the sentence of fifteen years to life, as

8  follows:

9          [A]s the judge told you, you must do two-thirds of that sentence
           before you are eligible for parole which means that you could do a
10         minimum of ten years.

11         This does not mean that you will be paroled at the end of ten years.

12         It only means that you will be eligible for parole at the end of ten
           years provided you earn both good time and work time credits.
13
           If you do not earn good time or work time credits, you would be
14         eligible for parole at a period of time of 15 years.

15         However, again, that just means you would be eligible for parole at
           that time.  It does not mean that you would, in fact, be paroled at
16         the end of 15 years.

17  Ans., Ex. A at 49.  Later during the colloquy, defense counsel noted:

18         I think there is a question in my mind that the corrections board
           might interpret–even though the court pursuant to a plea bargain
19         imposes a sentence to run concurrent on Counts II, III and IV–that
           the use allegation therein might be utilized to extend the time that
20         he would be eligible for parole; that it is our understanding that
           that would not be the case and the sentence would be to run
21         concurrent and not be used to extend the base time of Count I.

22  _____

23      [1]  In its per curiam opinion, the Supreme Court did not acknowledge that for twenty-four
    years the Ninth Circuit had consistently held that in order to comport with due process a state
24  parole board's decision to deny parole had to be supported by "some evidence," as defined in
    Superintendent v. Hill, 472 U.S. 445 (1985), that bore some indicia of reliability.  See Jancsek v.
25  Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987); McQuillion v. Duncan, 306 F.3d
    895, 904 (9th Cir. 2002) ("In Jancsek . . . we held that the process that is due in the parole
26  rescission setting is the same as the Supreme Court outlined in Superintendent v. Hill . . . .")

1    Ans., Ex. A at 61.  The prosecutor also explained in petitioner's presence:

2            [T]he Board of Prison Terms . . . will consider the entire case and
             the entire record of the defendant in setting an initial parole date.
3
             That would be what counts were charged, what counts were
4            dismissed, his total background, whether he has ever been in
             trouble before and all those things in determining the first eligible
5            parole date.

6            I was told by the Board of Prison Terms that they could not give
             me even an average as to what the first initial parole time period
7            would be since they are in the process of making up a matrix . . . .

8            [H]e isn't going to get an additional three years for the GBI . . .
             because they are going to be running concurrent.
9
             . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
10
             [T]here cannot be an eligibility for parole prior to the ten years; but
11           that the actual term to be served will be fixed by the . . . Board of
             Prison Terms and Parole.
12
             . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
13
14           So it is possible, after they have interviewed him and everything,
             that it is possible that he would be eligible for parole at the end of
15           ten years.

16   Ans., Ex. A at 62-63.

17          Finally, the prosecutor stated:

18           . . . This is a fluid thing that could fluctuate at any time during the
             time of your course of stay there depending not only upon your
19           background and the crimes you are pleading to up to date, but
             anything you might do in the future.
20

21   Ans., Ex. A at 64.   The prosecutor then asked petitioner if he understood "that there is absolutely

22   no guarantee that the Board of Prison Terms will set your first eligibility date at the 15 years less

23   the one third."  Ans., Ex. A at 65.  Petitioner responded that he understood.  Id.

24          Following his entry of plea, petitioner was sentenced to a total aggregate term of

25   fifteen years to life in state prison.  Ans. Ex. A at 50 (discussion of concurrent terms imposed on

26   other charges).  When he reached prison, petitioner's minimum eligible parole date was

                                                    7

1   determined to be June 26, 1989  and he appeared before the Board in 1989, 1991, and 1995.

2   See, e.g., Ans, Ex. A at 217.

3            On May 24, 2000, the Board again considered petitioner's case.  Petitioner did not

4   appear before the Board at that time, but he instead allowed counsel to represent his interests at

5   the hearing.   The Board listened to counsel's presentation, argument by a representative of the

6   Los Angeles County District Attorney's Office, and statements from the murder victim's mother

7   and sister.  The Board then ruled:

8            The Board has considered Mr. Rosales' case and we've denied his
             parole for a four year period.  I'm going to read the decision.  The
9            Panel reviewed all the information received from the public and
             relied on the following circumstances in concluding that the
10           prisoner is not suitable for parole and would pose an unreasonable
             risk of danger to society or a threat to public safety if released from
11           prison.  Number one was the commitment offense, which the Panel
             finds was carried out in an especially cruel and callous manner.
12           Multiple victims were attacked and injured or killed in the same
             incident.   And the offense was carried out in a manner which
13           demonstrates an exceptionally callous disregard for human
             suffering.  These conclusions are drawn from the Statement of
14           Facts wherein the petitioner burglarized the victim's vehicle, and
             the victim, accompanied by three other victims, confronted Mr.
15           Rosales.  They realized that he had taken property from the
             victim's vehicle.  They attempted to detain him and call the police.
16           he took objection to this.  He pulled out a large knife and began
             stabbing the victims who were defenseless at that point.  Stabbed
17           each of the victims resulting in the death of one victim and the
             critical injury to other three victims . . . who . . . survived the
18           incident, received extensive injuries which have caused them a life
             time of problems, including the inability to bear children as a result
19           of the actions of Mr. Rosales.   Regarding his institutional
             behavior, he has programmed fairly well while he's been in the
20           institution.  He has upgraded vocationally.  He had participated in a
             number of self-help programs including contemplated [sic]
21           meditation, AA, and Alternatives to Violence, for which he should
             be commended, as least for that participation.  Response to 3042
22           notices, we did have significant opposition to parole for Mr.
             Rosales.  We received correspondence from Los Angeles County
23           Sheriff's Department . . . .  We had a representative from the
             District Attorney's Office in Los Angeles who was here to oppose
24           parole.  We also had two family members . . . [who] voiced
             opposition to parole . . . .  We have resolutions from a number of
25           city councils in the area opposing parole for Mr. Rosales . . . .  We
             have quite a few letters with what are easily hundreds and hundreds
26           of signatures from individuals opposing parole for Mr. Rosales.

8

1

2   And the Panel makes the following findings:  That the prisoner
continues to need therapy in order to face, discuss, understand and
cope with stress in a non-destructive manner.  Until further
progress is made, the prisoner continues to be unpredictable and a

3   threat to others.  He should be commended for his positive
programming though.  He has remained disciplinary-free for an

4   extended period . . . .  He has upgraded vocationally.  He has
participated in self-help programs.  However, those positive

5   aspects of his behavior do not outweigh the factors of unsuitability.

6   Ans., Ex. A at 167-69.

7         In separately denying parole for a period of four years in petitioner's case, the

8   Board noted:

9         The Panel also finds that Mr. Rosales needs additional therapy in
order to examine his apparent hostility toward women and to

10  develop an understanding of the profound impact his actions have
had on the lives of the victims and the victim's families.  In

11  addition, it is very difficult to adequately assess Mr. Rosales' level
of insight into the commitment offense in as much as he has

12  declined to attend this hearing and discuss the matter with the
Board.

13

14  Ans., Ex. A at 170.

15        Petitioner pursued administrative remedies and then, still acting pro per, filed

16  petitions for writ of habeas corpus in the Sacramento County Superior Court, the California

17  Court of Appeal, and California Supreme Court, arguing that the Board's unsuitability finding

18  was not supported by "some evidence;" that its finding that he needed further therapy lacked

19  evidentiary support; that the Board abused its discretion in denying parole for four years; that the

20  Board has changed petitioner's sentence to one of life imprisonment without the possibility of

21  parole, which is disproportionate to his crime; that California Penal Code §§ 12 and 13 have been

22  violated by the refusal to impose a definite sentence; and that the Board erred in not setting a

23  parole date in his case.  Ans., Ex. C at 16-55.  The Sacramento County Superior Court issued the

24  only reasoned decision in denying petitioner state habeas relief, reasoning as follows:

25        The callous nature of the commitment offense provides "some
evidence" of Petitioner's unsuitability for parole and is good cause

26        for a 4 year suitability denial.

9

1   Ans., Ex. C at 250.

2           After counsel was appointed in this federal habeas action, petitioner returned to

3   the state courts, this time arguing that there was no rational relationship connection between the

4   Board's findings and the denial of parole and no evidentiary support for the Board's findings;

5   that his rights were violated when the Board denied him parole for failure to meet conditions

6   which he had already met; that the Board did not engage in individualized decision making but

7   instead relied on the "no parole" policy; that his right to be free of cruel and unusual punishment

8   was violated because the Board subjected him to a pro forma hearing which made it impossible

9   for him to demonstrate his suitability for release on parole; and that his right to be free of cruel

10  and unusual punishment was violated when the Board's actions, in essence, imposed a sentence

11  of life imprisonment without the possibility of parole.  The Los Angeles County Superior Court

12  denied the petition raising these claims on the grounds of untimeliness.  Petitioner's Exhibits, Ex.

13  11.[2]  Thereafter, petitioner again sought habeas relief in the California Supreme Court raising

14  these same new claims and that court issued a one-line denial of his petition.  Id., Ex. 12.

15  V.      The Board's Finding That Petitioner Was Unsuitable For Parole (Claims One and Two)

16          Petitioner seeks federal habeas relief on the grounds that the Board's decision in

17  2000 to deny him parole, and the findings upon which that denial was based, were not supported

18  by "some evidence" as required under California law.  However, under the Supreme Court's

19  decision in Swarthout, this court may not review whether California's "some evidence" standard

20  was correctly applied in petitioner's case.  131 S. Ct. at 862-63; see also Miller v. Oregon Bd. of

21  Parole and Post-Prison Supervision, 642 F.3d 711, 716 (9th Cir. 2011) ("The Supreme Court

22  held in [Swarthout v.] Cooke that in the context of parole eligibility decisions the due process

23

24          [2]  Although respondent's counsel mentions the Los Angeles County Superior Court's
    ruling on this petition in her answer, she does not argue that any of petitioner's claims for federal
25  habeas relief are procedurally barred.  The court therefore deems any reliance on procedural bar
    to have been waived.  Cone v. Bell, __ U.S. __, ___,129 S. Ct. 1769, 1791, n. 6 (2009)
26  ("[P]rocedural default may be waived if it is not raised as a defense.")

1  right is *procedural*, and entitles a prisoner to nothing more than a fair hearing and a statement of

2  reasons for a parole board's decision[.]"); Roberts v. Hartley, 640 F.3d 1042, 1046 (9th Cir.

3  2011) (under the decision in Swarthout, California's parole scheme creates no substantive due

4  process rights and any procedural due process requirement is met as long as the state provides an

5  inmate seeking parole with an opportunity to be heard and a statement of the reasons why parole

6  was denied); Pearson, 639 F.3d at 1191 ("While the Court did not define the minimum process

7  required by the Due Process Clause for denial parole under the California system, it made clear

8  that the Clause's requirements were satisfied where the inmates 'were allowed to speak at their

9  parole hearings and to contest the evidence against them, were afforded access to their records in

10  advance, and were notified as to the reasons why parole was denied.'")

11        The federal habeas petition pending before the court in this case reflects that

12  petitioner was represented by counsel at his 2000 parole suitability hearing.  The record also

13  establishes that at that hearing petitioner was given the opportunity to be heard and received a

14  statement of the reasons why parole was denied by the Board panel.  That is all the process that

15  was due petitioner under the Constitution.  Swarthout, 131 S. Ct. 862; see also Miller, 642 F.3d

16  at 716; Roberts, 640 F.3d at 1046; Pearson, 639 F.3d at 1191.  It now plainly appears that

17  petitioner is not entitled to relief with respect to his due process claims.  Accordingly, petitioner

18  is not entitled to federal habeas relief with respect to his claim that the Board failed to properly

19  apply California's "some evidence" standard and thereby violated his right to due process in

20  denying him parole in 2000.[3]

21

22        [3] In his petition and traverse, petitioner contends that the Board failed to comply with
   state laws and regulations when it found him unsuitable for parole at his May 2000 hearing.
23  Petitioner's arguments that the state court erred in applying state law are not cognizable in this
   federal habeas corpus proceeding.  See Rivera v. Illinois, ___ U.S. ___, 129 S. Ct. 1446, 1454
24  (2009) ("[A] mere error of state law . . . is not a denial of due process") (quoting Engle v. Isaac,
   456 U.S. 107, 121, n. 21 (1982) and Estelle v. McGuire, 502 U.S. 62, 67, 72-73 (1991)).  A
25  habeas court may not grant the writ on the basis of errors of state law where, as here, the
   combined effect of those errors does not violate the Federal Constitution.  Lewis v. Jeffers, 497
26  U.S. 764, 780 (1990); Parle v. Runnels  387 F.3d 1030, 1045 (9th Cir. 2004).

VI.     Reliance On The "No Parole" Policy And Individualized Decision Making (Claim 3)

Petitioner argues that the Board did not engage in individualized decision making in denying him parole  because they relied on California's "no parole policy."  In support of this contention, petitioner offers the declaration of Albert Leddy, who was a Commissioner and then the Chairman of the Board of Prison Terms until his retirement in 1992.   Petitioner's Exhibits 7 ¶ 2.  Leddy avers that former Governor Pete Wilson installed commissioners who favored a "no parole" policy and that thereafter, the number of inmates paroled declined precipitously.  Id. at ¶¶ 5, 14.  Petitioner also offers a portion of a deposition of a Edmund Tong, who is not further identified by petitioner, but who discusses in the except of his testimony changes in the Board of Prison Terms under Governor Wilson.  According to Mr. Tong, under prior administrations, the Board panel was concerned that the regulations be followed, but this changed during the Wilson administration  Id., Ex. 8 at 48: 1-9.  He also identified two commissioners, John Gillis and Ron Koenic, who he believed reached their parole decisions based on their perception of what the governor wanted them to do.  Id., Ex. 8 at 106: 16-20.   In addition, petitioner has submitted the transcript from a 1999 legislative hearing on parole, which examined former Governor Wilson's impact on the parole system in California.

Petitioner is entitled to a parole hearing before an unbiased decision maker who considers his case individually.  O'Bremski v. Maass, 915 F.3d 418, 422 (9th Cir. 1990).  Contrary to petitioner's claim, the record before this court reflects that the Board panel examined the facts of petitioner's case in reaching its decision.  Moreover, petitioner's "proof" of the Board's alleged bias is little but speculation and hearsay and concerns a period before the May 2000 suitability hearing that petitioner challenges here.  Finally, nothing in petitioner's supporting evidence shows that the Board panel members hearing his case – Commissioners Hepburn, Munoz and Cater – were appointed by Governor Wilson, were influenced by that governor's views (even assuming those views have been proven) or embraced a no-parole policy themselves.  Petitioner has failed to satisfy his burden of establishing that he is entitled to relief

1  in these habeas proceedings.  Tidwell v. Marshall, 526 F. Supp.2d 1031, 1046 (C.D. Cal. 2007)

2  (where a habeas petitioner broadly claims that a Board panel was biased he bears the burden of

3  producing evidence demonstrating bias) see In re Morrall, 102 Cal. App.4th 280, 285 (2003)

4  ("political rhetoric does not establish such a blanket policy").

5  VII.    The Denial Of Parole And The Eighth Amendment (Claim 4)

6              Petitioner argues that the Board wantonly inflicts unnecessary pain on petitioner

7  in administering his sentence in violation of the Eighth Amendment.  In advancing this argument

8  petitioner relies on two capital cases, Atkins v. West Virginia, 536 U.S. 304 (2002) and Gregg v.

9  Georgia, 428 U.S. 153 (1977), for the proposition that the Eighth Amendment is violated when

10  punishment involves the unnecessary and wanton infliction of pain without penological

11  justification wholly apart from the proportionality of the punishment.  Second Amended Petition

12  at 17.  Petitioner cites nothing to suggest that this branch of Eighth Amendment jurisprudence

13  has any application outside the capital context.  Indeed, citing Gregg, the Ninth Circuit has

14  recognized that "[i]n the context of executions, the Eighth Amendment prohibits punishments

15  that involve the unnecessary and wanton infliction of pain . . . ."  Beardslee v. Woodford, 395

16  F.3d 1064, 1070 (9th Cir. 2005) (internal citation & quotation omitted).  Moreover, the Ninth

17  Circuit has said that any emotional trauma from dashed expectations concerning parole "does not

18  offend the standards of decency in modern society."  Baumann v. Arizona Department of

19  Corrections, 754 F.2d 841 (9th Cir. 1985).  See also Bowens v. Sisto, No. CIV S-08-CV-1489

20  LKK CHS, 2011 WL 2198322, at *8 (E.D. Cal. June 6, 2011) ("Petitioner fails to articulate how

21  the denial of parole to an inmate serving an indeterminate life sentence constitutes cruel and

22  unusual punishment, particularly where a parole grant in this context would effectively reduce his

23  presumptively valid maximum sentence of life imprisonment."); Grant v. Swarthout, No.

24  2:06cv02842-RCT, 2010 WL 3941926, at *2 (E.D. Cal. Oct. 6, 2010); Gross v. Quarterman,

25  Civil Action No. H-04-136, 2007 WL 4411755 at *12  (S.D. Tex. 2007) ("denying parole and

26  /////

1  requiring an inmate to serve his entire sentence is punishment, but it does not constitute cruel and

2  unusual punishment.").

3          To the extent that petitioner is raising a proportionality challenge to his sentence,

4  he fares no better.  With the exception of capital cases, successful Eighth Amendment challenges

5  to the proportionality of a sentence have been "exceedingly rare." Rummel v. Estelle, 445 U.S.

6  263, 272, (1980).  See also Solem v. Helm, 463 U.S. 277, 289-90 (1983); Ramirez v. Castro, 365

7  F.3d 755, 775 (9th Cir. 2004.   The Eighth Amendment forbids only extreme sentences that are

8  grossly disproportionate to the crime.   Solem, 463 U.S. at 288, 303; Harmelin v. Michigan, 501

9  U.S. 957, 1001 (1991) (Kennedy, J., concurring).  A life sentence for murder, even without the

10 possibility of parole, is not constitutionally disproportionate.  Harris v. Wright, 93 F.3d 581, 583-

11 585 (9th Cir. 1996); United States v. LaFleur, 971 F.2d 200, 211 (9th Cir.1991) ( "[I]t is clear

12 that a mandatory life sentence for murder does not constitute cruel and unusual punishment.");

13 see also Harmelin, 501 U.S. at 1009 (upholding a sentence of life imprisonment with no

14 possibility of parole for a first offense crime of possession of 672 grams of cocaine as not being

15 disproportionate).   ___

16 VIII.   Violation Of The Plea Bargain (Claim 5)

17          Plea agreements are contractual in nature and are construed using the ordinary

18 rules of contract interpretation.  United States v. Transfiguracion, 442 F.3d 1222, 1228 (9th Cir.

19 2006); Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir. 2003).  Courts will enforce the literal

20 terms of the plea agreement but must construe any ambiguities against the prosecution.  United

21 States v. Franco-Lopez, 312 F.3d 984, 989 (9th Cir. 2002).  "[W]hen a plea rests in any

22 significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part

23 of the inducement or consideration, such promise must be fulfilled." Santobello v. New York,

24 404 U.S. 257, 262 (1971).  In construing a plea agreement, this court must determine what

25 petitioner reasonably believed to be its terms at the time of the plea.  United States v. Anderson,

26 970 F.2d 602, 607 (9th Cir. 1992), as amended, 990 F.2d 1163 (9th Cir. 1993).

1    Petitioner argues that the Board's 2000 decision to deny him parole has converted

2    his sentence into a term of life imprisonment without the possibility of parole, which deprives

3    him of the benefit of his plea bargain.  In this regard, petitioner contends that he was promised

4    that the concurrent assault charges would not extend his sentence and that  he would be paroled if

5    he behaved in prison.   This argument is without merit.

6    The record before the court reflects that the prosecutor in petitioner's state court

7    criminal case did not promise that the Board would ignore the facts of the concurrent counts in

8    setting a parole date.  In fact, the prosecutor specifically informed petitioner that the Board would

9    consider "what counts were charged, what counts were dismissed, his total background" in

10   considering petitioner's suitability for parole.  Ans., Ex. A at 62.   In addition, the prosecutor did

11   not promise petitioner that he would be paroled if he behaved himself in prison; rather, he told

12   petitioner that accruing good time and work time would effect his minimum eligibility for parole,

13   not that it would guarantee him a parole date.  Ans., Ex. A at 49.  The prosecutor's final

14   admonishment to petitioner during the plea colloquy was that the eligibility for parole was "a

15   fluid thing," words that cannot be interpreted to contain any sort of promise that petitioner would

16   be paroled by a certain date or at all.  Ans., Ex. A at 64.

17   Therefore, petitioner is not entitled to federal habeas relief with respect to his

18   claim that the Board's decision to deny him parole in 2000 constituted a violation of his plea

19   bargain in the underlying criminal prosecution.  ___

20                                              CONCLUSION

21   Accordingly, for the reasons set forth above, IT IS HEREBY RECOMMENDED

22   that the petition seeking federal habeas relief be denied and this case closed.

23   These findings and recommendations are submitted to the United States District

24   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

25   one days after being served with these findings and recommendations, any party may file written

26   objections with the court and serve a copy on all parties.  Such a document should be captioned

1    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

2    shall be served and filed within twenty-one days after service of the objections.  The parties are

3    advised that failure to file objections within the specified time may waive the right to appeal the

4    District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

5            In any objections he elects to file, petitioner may address whether a certificate of

6    appealability should issue in the event he files an appeal of the judgment in this case.  See Rule

7    11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a

8    certificate of appealability when it enters a final order adverse to the applicant); Hayward v.

9    Marshall, 603 F.3d 546 (9th Cir. 2010) (en banc) (prisoners are required to obtain a certificate of

10   appealability to review the denial of a habeas petition challenging an administrative decision

11   such as the denial of parole by the parole board), overruled in part by Swarthout, 562 U.S. ___ ,

12   131 S. Ct. 859 (2011).

13   DATED: July 30, 2011.

14

15                                          _Dale A. Drozd_____

16                                          DALE A. DROZD
                                            UNITED STATES MAGISTRATE JUDGE

17

18   hm
     rosa0230.submhc

19

20

21

22

23

24

25

26